IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

RANDALL C. RANDOLPH,

        Plaintiff,

v.                                   CIVIL ACTION NO.   2:15-cv-05159

CONSTELLIUM ROLLED PRODUCTS
RAVENSWOOD, LLC,

        Defendant.

MEMORANDUM OPINION AND ORDER

Pending before the Court are Plaintiff Randall C. Randolph's Motion to Remand [ECF 9] and Defendant Constellium Rolled Products Ravenswood, LLC's Motion to Dismiss [ECF 3]. For the reasons discussed below, the Court **DENIES** the Motion to Remand and **GRANTS** the Motion to Dismiss.

I.     *FACTUAL BACKGROUND AND PROCEDURAL HISTORY*

Plaintiff Randall C. Randolph was formerly employed by Defendant Constellium Rolled Products Ravenswood, LLC.[1]  Plaintiff had worked for Defendant for over seventeen years when Defendant terminated his employment on April 21, 2011.   During the course of his employment, Plaintiff was a member of the bargaining unit of the United Steel Workers of America Local 5668 ("USWA").   Plaintiff challenged his termination by filing a grievance as provided for by the controlling collective bargaining agreement ("CBA").   In response to that grievance and after a

---

[1] Plaintiff's employer was formerly known as Alcan Rolled Products—Ravenswood, LLC.

period of negotiation between Defendant and the USWA, Plaintiff was reinstated to his employment with a promise of back pay for the period he was off work, less a two-week suspension period.   This agreement was memorialized in a written Reinstatement Agreement dated July 16, 2012, and Plaintiff returned to work on that date.   The Reinstatement Agreement did not specify an amount of agreed-upon back pay.   (Compl. Ex. A, ECF 1 at 18.)   Over the course of the next year, Plaintiff made repeated attempts to collect the back pay due to him for the period of his termination.   The parties continued to dispute the amount Plaintiff was owed, however, and it was not until November 17, 2014, after Plaintiff had voluntarily retired on October 11, 2014, that Defendant issued a payment to Plaintiff in the gross amount of $40,172.13.   (Letter from Constellium to Plaintiff (Nov. 19, 2014), Compl. Ex. B, ECF 1 at 19.)   This amount represented Defendant's own back pay calculation and was considerably less than the amount to which Plaintiff believed he was entitled.

On March 18, 2015, Plaintiff filed suit in the Circuit Court of Jackson County, West Virginia, claiming that the amount he was paid under the Reinstatement Agreement was a gross underestimate of the amount he would have earned but for his termination.   His Complaint contains two counts.   The first alleges violations of the West Virginia Wage Payment and Collection Act ("WPCA") and the second alleges breach of the Reinstatement Agreement. Plaintiff seeks an award of actual damages, treble damages under the WPCA, attorney's fees, and non-economic and punitive damages.

Defendant removed the action to this Court on April 23, 2015, on grounds of federal question jurisdiction.   Defendant asserts that each of Plaintiff's claims is completely preempted by § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185.   Plaintiff disputes

2

this contention and moved to remand on May 22, 2015.   Also pending is Defendant's motion to dismiss Plaintiff's WVCPA claim to the extent that it seeks to recover back pay, as Defendant believes that the back pay authorized by the parties' Reinstatement Agreement does not constitute "wages" under the WVCPA.   Both motions are ripe for resolution.

## II.   ANALYSIS

As Plaintiff's motion to remand challenges subject matter jurisdiction, the Court begins by evaluating its jurisdiction over this action.   Because the Court finds that subject matter jurisdiction exists, it proceeds to evaluate the merits of Defendant's motion to dismiss.

### a.   Motion to Remand

A civil action may be removed from state court to federal court if it is one over which the federal district court would have original jurisdiction.   28 U.S.C. § 1441(b).   Congress has granted federal courts original jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States.   28 U.S.C. § 1331.   If at any time prior to final judgment "it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."   28 U.S.C. § 1447(c).   The burden of establishing federal jurisdiction is on the party seeking removal. *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994).

In determining whether a complaint raises a federal question, the Court applies the well-pleaded complaint rule.   *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).   This rule "provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint."   *Id.* (citing *Gully v. First Nat'l Bank*, 299 U.S. 109, 112–13 (1936)).   However, there is an exception to the well-pleaded complaint rule.   *Id.* at 393.   Under the doctrine of "complete preemption," an action may be removed, even if the plaintiff's

complaint does not explicitly raise a federal question, if the "subject matter of a putative state law claim has been totally subsumed by federal law."   *Lontz v. Tharp*, 413 F.3d 435, 439-40 (4th Cir. 2005).   "Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law."   *Caterpillar Inc.*, 482 U.S. at 393 (citing *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 24 (1983)).

The LMRA is a statute with this type of preemptive force.   *Id.*; *Owen v. Carpenters' Dist. Council*, 161 F.3d 767, 772 (4th Cir. 1998) (complete preemption doctrine applies to claims under § 301 of the LMRA).   Section 301(a) provides: "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties . . . ."   A state law claim is preempted by § 301 of the LMRA where resolution of the claim is substantially dependent upon analysis of a collective bargaining agreement, *Caterpillar Inc.*, 482 U.S. at 395, or where the claim is "inextricably intertwined with consideration of the terms of the labor contract."   *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 213 (1985).

In this case, Plaintiff's WPCA and breach of contract claims arise exclusively under West Virginia law.   Nevertheless, both claims depend on Plaintiff's preferred interpretation of the Reinstatement Agreement, which Defendant argues should be viewed as an addendum to the collective bargaining agreement.   Defendant relies heavily on *Davis v. Bell Atl.-W. Va., Inc.*, 110 F.3d 245 (4th Cir. 1997), a case in which the Fourth Circuit held that an employee's state law claims for breach of a settlement agreement that resolved a grievance brought pursuant to her collective bargaining agreement were preempted by § 301 of the LMRA.   In *Davis*, the settlement

4

agreement negotiated between the union and employer reinstated an employee after a prior discharge for excess absenteeism and tardiness. *Id.* at 246. The agreement provided for immediate termination upon a violation of its terms. The employee was later terminated after violating the settlement agreement and brought suit in state court, alleging breach of the collective bargaining agreement, breach of the settlement agreement, and wrongful discharge. The Fourth Circuit found that § 301 preempted each state law claim. *Id.* at 248. As to the claim for breach of the settlement agreement, the Fourth Circuit reasoned that the settlement agreement was dependent on rights conferred on the employee by the collective bargaining agreement and therefore drew its "entire vitality and legitimacy" from the underlying collective bargaining agreement. *Id.* Importantly, the appellate court confirmed that the claim for breach of the settlement agreement was independently preempted by federal law even though the employee had also sued for breach of the collective bargaining agreement itself. The court distinguished *Marion v. Virginia Elec. & Power Co.*, 52 F.3d 86 (4th Cir. 1995), which held that an independent employment contract does not fall within the scope of § 301 preemption merely by borrowing terms from a collective bargaining agreement, by reasoning that the settlement agreement in *Davis* was not an independent employment contract at all—rather, it arose under and its application would be confined by the parties' collective bargaining agreement, which remained in force during the course of the employee's term of employment.

The Fourth Circuit reaffirmed its holding in *Davis*, perhaps even more explicitly, by emphasizing in *Freeman v. Duke Power Co.*, 114 Fed. App'x 526 (4th Cir. 2004), that "[s]ettlements of employee grievances that are entered pursuant to the terms of a CBA are labor contracts within the meaning of § 301." *Id.* at 531. Moreover, the Fourth Circuit has not been

alone in holding that a settlement agreement, negotiated between the union and the employer in response to an employee grievance brought under the collective bargaining agreement, is itself part of the collective bargaining agreement.   *See Olson v. Bemis Co., Inc.*, 800 F.3d 296, 301 (7th Cir. 2015) (finding that a grievance settlement is a contract under § 301 and noting that no court has yet found otherwise); *Teamsters Local Union 480 v. United Parcel Serv., Inc.*, 748 F.3d 281, 286 (6th Cir. 2014) (Section 301 of the LMRA encompassed a suit to enforce a settlement agreement entered into by the employer and union); *see also Int'l Union of Operating Eng'rs, Local 351 v. Cooper Nat. Res., Inc.*, 163 F.3d 916, 919 (5th Cir. 1999) (last chance agreement must be thought of as a supplement to the collective bargaining agreement); *Stallcop v. Kaiser Found. Hosps.*, 820 F.2d 1044, 1048 (9th Cir. 1987) (an oral agreement to reinstate employment is effective only as part of the collective bargaining agreement).

Plaintiff does not have a cogent response to Defendant's attempt to analogize this case to *Davis*.   He only claims that the Reinstatement Agreement should not be considered part of the CBA because it did not apply to other employees.   But *Davis* does not require that a settlement agreement universally bind all union employees; rather, the issue is whether Plaintiff's rights under the Reinstatement Agreement are "inextricably intertwined" with consideration of the CBA.   *See Lueck*, 471 U.S. at 213.   The Court finds that they are.   Just as in *Davis* and *Freeman*, the Reinstatement Agreement upon which Plaintiff's claims rely arose from an attempt to resolve a grievance filed pursuant to the procedure set forth in the CBA.   The CBA remained in force after Plaintiff's reinstatement to employment, as modified by the Reinstatement Agreement's terms. Further, although the *Freeman* court clarified that this was unnecessary to its holding in *Davis*, 114 Fed. App'x at 531, the Reinstatement Agreement also draws upon the CBA in setting forth

6

Plaintiff's rights in the workplace.[2]   The Court thus **FINDS** that the Reinstatement Agreement is a labor contract within § 301 of the LMRA.

This conclusion alone is sufficient to give rise to complete preemption of Plaintiff's claims. However, the Court also finds that Plaintiff's WPCA claim is preempted because it will require interpretation of the governing CBA.   The Reinstatement Agreement is silent on the amount of back pay to which Plaintiff would have been entitled but for his termination.   (Compl. Ex. A, ECF 1 at 18 (indicating only that Plaintiff waived his right to back pay during the period of his two-week suspension).)   This issue appears to have been hotly contested at the time of drafting, and remains the subject of much dispute.   It suffices to say that the resolution of Plaintiff's claim to back pay will require an analysis of the parties' CBA.   Apart from the factual question of whether Plaintiff was ready and willing to work a given number of hours during the period of his termination, his eligibility to work those hours, and the pay he would have received are issues substantially intertwined with the provisions of the CBA.   For these reasons, the Court **HOLDS** that each of Plaintiff's claims is entirely preempted by § 301 of the LMRA and will exercise subject matter jurisdiction over this action.

  *b.   Motion to Dismiss*

The Court now turns to the merits of Defendant's motion to dismiss Plaintiff's WPCA claim.   A motion to dismiss for failure to state a claim upon which relief can be granted tests the legal sufficiency of a civil complaint.   Fed. R. Civ. P. 12(b)(6); *Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999).   "[I]t does not resolve contests surrounding the facts, the merits

---

[2] For example, the Reinstatement Agreement states that Plaintiff's qualification as a Millwright is contingent on compliance with the agreement's terms.   (Compl. Ex. A, ECF 1 at 18.)   It also states that Plaintiff's seniority will govern his placement in production should he fail to fulfill his obligations under the agreement.   *Id.*

of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin,* 980 F.2d 943,

952 (4th Cir.1992) (citing 5A C. Wright & A. Miller, *Fed. Practice and Procedure* § 1356 (1990)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as

true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   A court decides

whether this standard is met by separating the legal conclusions from the factual allegations,

assuming the truth of only the factual allegations, and then determining whether those allegations

allow the court to reasonably infer that "the defendant is liable for the misconduct alleged."   *Id.*

A motion to dismiss will be granted if, "after accepting all well pleaded allegations in the plaintiff's

complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's

favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim

entitling him to relief."   *Edwards*, 178 F.3d at 244.

> Under the pertinent provision of the WPCA in effect at the time of filing,
>
> Whenever an employee quits or resigns, the person, firm or corporation shall pay the employee's wages in full no later than the next regular payday. . . However, if the employee gives at least one pay period's written notice of intention to quit, the person, firm or corporation shall pay all wages earned by the employee at the time of quitting.

W. Va. Code § 21-5-4(c) (amended 2015).[3]   This statute further provided that if an employer "fails

to pay an employee wages as required under this section," the employer "is liable to the employee

for three times that unpaid amount as liquidated damages."   W. Va. Code § 21-5-4(e) (amended

---

3 There have been significant revisions to the WPCA since the filing of Plaintiff's Complaint; chief among them, for the purpose of Plaintiff's claim, is a reduction in the liquidated damages recoverable under the statute from three to two times the unpaid amount of wages.   Wage Payment and Collection Act, S.B. 12, W. Va. Code §§ 21-5-1, 21-5-4 (2015).   The amendment to the WPCA was passed on March 13, 2015, and went into effect ninety days from passage.   As Plaintiff's Complaint was filed on March 18, 2015, all references to the WPCA will be to the statute in effect at the time of filing.

2015).   The definition of the term "wages" under the WPCA remained substantively unchanged after the 2015 amendments; the term was defined then and now, in pertinent part, as "compensation for labor or services rendered by an employee, whether the amount is determined on a time, task, piece, commission or other basis of calculation."[4]   W. Va. Code § 21-5-1(c) (amended 2015).

Defendant contends that because Plaintiff did not perform any "labor or services" on its behalf during the time he was discharged from employment, the "back pay" to which he lays claim does not constitute "wages" under the WPCA.   The West Virginia Supreme Court of Appeals squarely addressed the issue in *Conrad v. Charles Town Races, Inc.*, 521 S.E.2d 537 (W. Va. 1998).   In *Conrad*, the court held that back pay awards required under the federal WARN Act (for the employer's failure to give workers a full sixty days' notice and wages prior to a plant closure) were not "wages" under the WPCA.   *Id.* at 542.   After noting the definition of "wages" set forth in the statute, the West Virginia Supreme Court looked to the nature of the payments at issue to determine whether they could properly be considered wages under the Act.   Although the payments were measured based upon each worker's estimated earnings, the court reasoned that WARN payments were not back pay because they "[did] not compensate for past services."   *Id.* at 541 (citing *United Steelworkers v. North Star Steel*, 5 F.3d 39, 55 (3d Cir. 1993)).   The court's thorough analysis repeatedly endorses a definition of "wages" that covers payment only for services *actually performed*.   *See id.*   (citing *Georgia-Pacific v. Unemp't Comp. Bd.*, 630 A.2d

---

[4] The definition of wages also includes fringe benefits.   W. Va. Code § 21-5-1(c).   Plaintiff's WPCA claim also appears to include a demand for accrued vacation time which was owed him at the time of his retirement.   (Comp. ¶¶ 16, 18, ECF 1 at 15-16.)   Accrued vacation time would potentially fall within the scope of the wages definition.   *See Meadows v. Wal-Mart Stores, Inc.*, 530 S.E.2d 676, 689 (W. Va. 1999). In any event, Defendant's motion to dismiss requests the dismissal of the WPCA claim only to the extent it requests back pay for the period of Plaintiff's termination, and the Court's ruling only applies to the back pay issue.

948 (1993)) ("[M]erely because wage amounts form the basis for the formula by which to calculate the WARN payments, those payments are not lost wages; they are damages owed for violation of WARN's notice requirements.").

The West Virginia Supreme Court revisited the issue in *Taylor v. Mutual Min., Inc.*, 543 S.E.2d 313, 318 (W. Va. 2000), and again favored the plain reading of the statute.   In *Taylor*, laid-off miners sought to recover from their employer past due wages as well as amounts awarded in arbitration proceedings and in an MSHA proceeding.   The employer challenged the recovery of the arbitration and MSHA awards under the WPCA, alleging that these amounts were akin to damage awards, rather than payment for labor or services.   *Id.* at 315-16.   Significant for purposes of the case at hand was the fact that the MSHA award arose from the discharge of five miners who were illegally discharged after reporting a number of safety violations.   The miners were awarded their lost wages and benefits.   The West Virginia Supreme Court found that the MSHA award "easily [fell] within the reaches of our *Conrad* decision."   *Id.* at 318.   The court reasoned as follows:

> In each of those matters, the remedy fashioned was an award of back pay. Such amounts, just as in *Conrad,* were awarded not for "labor or services rendered," but instead as a form of damages for violation of the collective bargaining agreement. We were clear in *Conrad* that amounts awarded as a form of damages do not qualify as "wages" under the Act.

*Id.*   *Conrad* and *Taylor* make clear that the WPCA's special protection of wages is applicable only to compensation due in return for work performed, no matter how the payments may be defined or classified by the employer and employee.   *See id.* at 315.   This Court has also previously addressed the scope of the "wages" definition under the WPCA, granting summary judgment for the employer on an employee's WPCA claim where she sought to recover "wages" for a period of

time when she had been placed on administrative leave and thus had not performed any labor or services on behalf of her employer. *Boggess v. Housing Auth. of Charleston*, 273 F. Supp. 2d 729, 751-52 (S.D. W. Va. 2003).

The Court finds this precedent controlling in the case at hand. It makes this determination based on the facts set forth in the Complaint and the two exhibits attached to it: the Reinstatement Agreement and a November 19, 2014 letter addressed to Plaintiff from Constellium, indicating that Plaintiff had been paid "earnings" as a result of his reinstatement in the amount of $40,172.13.[5] Fed. R. Civ. Proc. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *Occupy Columbia v. Haley*, 738 F.3d 107, 116 (4th Cir. 2013) (a district court may consider exhibits attached to the complaint in resolving a Rule 12(b)(6) motion to dismiss). Plaintiff alleges that his employment was terminated between April 21, 2011 and July 16, 2012, when he returned to work under the terms of the Reinstatement Agreement. While Plaintiff alleges that Defendant had promised that he would be "made whole" with respect to lost wages and benefits, he provided neither labor nor services in exchange for that promise or for the wages and benefits themselves. Rather, the only plausible reading of the Complaint is that the back pay was intended to function as a penalty for the improper termination of Plaintiff's employment. The Court is unpersuaded that the promised back pay qualifies as wages merely

---

[5] Plaintiff has attached his 2014 W-2 form as an exhibit to his response in opposition to Defendant's motion to dismiss. He argues that the federal income tax withheld from his back pay award is evidence that the sum should be considered "wages" under the WPCA. The Court cannot consider such an exhibit without converting Defendant's motion to dismiss into a motion for summary judgment, *see Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985), but it finds no need to do so. In *Conrad*, the plaintiff workers similarly claimed that the court's ruling on a motion to dismiss was premature because they were not given an opportunity to present similar tax documents. 521 S.E.2d at 539-40. The West Virginia Supreme Court of Appeals placed no significance on the tax implications of the payments when considering whether they fell within the definition of wages under the WPCA.

because Defendant referred to it as "earnings" in its correspondence.   (Compl. Ex. B, ECF 1 at 19.)   In *Conrad* and *Taylor*, the payments were both designated as back pay and calculated based on the employees' projected earnings.   The West Virginia Supreme Court determined that the nature of the payments, not their description, determines the applicability of the WPCA's provisions.   *Taylor*, 543 S.E.2d at 316; *Conrad*, 521 S.E.2d at 540.   In these circumstances, West Virginia law makes clear that the back pay is akin to damages and is not subject to liquidated damages under the WPCA.   Accordingly, the Court **GRANTS** Defendant's motion to dismiss Count I to the extent it seeks back pay under the Reinstatement Agreement.

### III.     CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff's Motion to Remand [ECF 9] and **GRANTS** Defendant's Motion to Dismiss [ECF 3] insofar as it seeks dismissal of Count I's demand for back pay and treble damages.   To the extent Count I of the Complaint seeks to recover back pay and treble damages under the WPCA, it is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:     February 17, 2016

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE